IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| AMIR M. MESHAL, | * |
| | * |
| Plaintiff, | * |
| | * Civil Action Number: |
| v. | * 4:22-CV-00010-RSB-CLR |
| | * |
| CHRISTOPHER C. WRIGHT, et al., | * |
| | * |
| Defendants. | * |
| | * |

**DEFENDANTS CHRISTOPHER WRIGHT, JOSHUA JANUFKA AND KEITH OGLESBY'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Christopher Wright, Joshua Janufka and Keith Oglesby ("State Defendants"), through undersigned counsel, hereby reply to Plaintiff's response (doc. 21) to their motion to dismiss (doc. 14), showing the Court as follows:

In their motion to dismiss, State Defendants made the following arguments: (1) Plaintiff is barred by the Eleventh Amendment and 42 U.S.C. § 1983 from suing State Defendants Janufka and Oglesby for damages in their official capacities (doc. 14-1, p. 6); (2) Plaintiff failed to allege any fact showing a Fourth Amendment unlawful seizure violation (*id.*, p. 7); (3) Plaintiff failed to allege any fact showing a Fourth Amendment unlawful search violation (*id.*, p. 10); (4) Defendants Janufka and Oglesby, sued in their individual capacities, are entitled to qualified immunity because at the very least they had arguable probable cause to support their actions (*id.*, p. 12); and (5) Plaintiff is not entitled to relief under *Ex parte Young* because he has not alleged facts showing a constitutional violation or that any purported constitutional violation was ongoing (*id.*, p. 15).

In response, Plaintiff does not contest State Defendants showing that official-capacity

1

claims for damages against Defendants Janufka and Oglesby are due to be dismissed. Accordingly, and for all the reasons stated in their initial brief in support of their motion to dismiss (doc. 14-1, p. 6), these claims are due to be dismissed. The arguments Plaintiff puts forward in response to State Defendants' other arguments do nothing to undermine State Defendants' contention that all claims against them are due to be dismissed.

**A. Plaintiff's response in support of his Fourth Amendment unlawful seizure claim.**

In their motion, Defendants conceded that the traffic stop of Plaintiff was a seizure. However, they showed that because Plaintiff was stopped for a traffic infraction—driving too closely to the vehicle in front of him in rainy conditions—the seizure was "reasonable" under the Fourth Amendment. (Doc. 14-1, p. 8, *citing to Whren v. United States*, 517 U.S. 806, 809-10 (1996) and *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) *(per curiam)*). Unable to get around these factual allegations and laws, Plaintiff now suggests that the stop was pretextual and that there is "no allegation" to suggest that Plaintiff was in fact following too closely. (Doc. 21, p. 11). This, despite the fact that Plaintiff received a citation for following too closely, and never alleged that the citation was unwarranted. (*See generally* Doc. 1). Plaintiff now argues that "the fact that Trooper Janufka decided to issue a courtesy warning does not show that the stop was objectively reasonable." (Doc. 21, p. 11). In other words, Plaintiff is now veering into conspiracy theory territory. But conspiracy theory aside, Plaintiff never alleged any fact in his Complaint to suggest that the stop was pretextual and that there was no basis for the citation he received. Moreover, this Court is only obligated to credit factual allegations and not conspiracy theories.[1] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] To make a finer point, if the troopers did not stop Plaintiff for a traffic infraction, then the implication by Plaintiff, at least, is that they stopped him because he was on the No Fly list. After all, there is no allegation that Plaintiff was stopped for no reason, or because of a grand fishing

Next, Plaintiff concedes that Officers Janufku and Oglesby need only reasonable suspicion of possible criminal activity to continue their investigation after initially stopping Plaintiff for a traffic infraction. (Doc. 21, p. 12 *citing to Rodrigues v. United States*, 575 U.S. 345, 354 (2015)). But contrary to Plaintiff's suggestion, reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1304 (11th Cir. 2021, *citing to Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Indeed, reasonable suspicion "is not concerned with 'hard certainties, but with probabilities'" and it may "be based on commonsense judgments and inferences about human behavior." *Id.*, *citing to United States v. Cortez*, 449 U.S. 411, 418 (1981). To show that an officer had reasonable suspicion, the officer "must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Alabama v. White*, 496 U.S. 325, 329 (1990).

Here, Plaintiff's own alleged facts show that Defendants Janufka and Oglesby had more than a mere "hunch" of possible criminal activity to justify their investigative detention of Plaintiff. As Plaintiff alleges, when asked if he was ever arrested, he told Trooper Janufka that he was, did not recall why, but believed it was for driving with a suspended license. (Doc. 1, ¶ 18). However, when Ofc. Janufka ran Plaintiff's information on NCIC, he discovered that Plaintiff was on the No Fly list of suspected terrorists. (*Id.*, ¶¶ 28, 57). This evasiveness and lack of candor, combined with the fact that Plaintiff had just dropped off a delivery at the site of the Super Bowl, are sufficient "articulable facts" for the troopers to believe that wrongdoing "was

---

expedition. (See generally Doc. 1). This requires the troopers to know *before* the stop that Plaintiff was on the No Fly list. But Plaintiff alleges that the troopers discovered he was on the No Fly list *after* the stop when they did a routine check of him on NCIC. (Doc. 1, ¶¶ 28, 57-61). Thus, Plaintiff's factual allegations belie his argument and suggestion of some grand conspiracy by GSP to target him or others similarly situated.

afoot" and to continue their investigative stop. And these alleged facts, contrary to Plaintiff's argument, are not based on "State Defendants' invitation [for the Court] to draw adverse inferences about Mr. Meshal's tone, demeanor, and level of cooperation." (Doc. 21, p. 13). Indeed, State Defendants never mentioned Plaintiff's "tone, demeanor, [or] level of cooperation" in their motion to dismiss. (Doc. 14-1). In other words, Defendants Janufka and Oglesby's reasonable suspicion to continue their investigatory detention was not based "solely on [Plaintiff's] name appearing on the watchlist." (Doc. 21, p. 14). But even if Defendants Janufka and Oblesby's reasonable suspicion was based, in part, on Plaintiff's placement on the watchlist, that too would survive constitutional scrutiny. "[I]nvestigatory stops are also authorized based on a reasonable suspicion of past criminal activity." *Gonzalez-Zea*, 995 F.3d at 1304; *citing to United States v. Hensley*, 469 U.S. 221, 229 (1985) (upholding a brief *Terry* stop of a person believed to be the individual on a police-issued wanted flyer "to check identification, . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information"); *United States v. Kapperman*, 764 F.2d 786, 792 (11th Cir. 1985) (holding that a *Terry* stop of a vehicle was supported by reasonable suspicion where officers had an objective reason to believe that there may have been a fugitive inside the vehicle). Here, like *Hensley*, the officers detained Plaintiff while they "attempt[ed] to obtain further information" from the FBI. (Doc. 1, ¶ 31).

Despite alleging that Defendants Janufka and Oblesby gave him a traffic citation for following too closely and allowed him to leave soon after hearing from the FBI, Plaintiff nevertheless argues that the investigatory stop "matured into a full-scale arrest." (Doc. 21, p. 16). This argument too fails.

Initially, the troopers' handcuffing of Plaintiff "does not convert a *Terry* stop into a *de*

4

*facto* arrest requiring probable cause if the police officer's actions are reasonable, particularly in light of an officer's need to protect himself or maintain the status quo." *United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir. 1985); *see also United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989) ("The handcuffing of [defendant] constituted a *Terry* stop, and was a reasonable action designed to provide for the safety of the agents."). Furthermore, as Plaintiff points out, some factors the Eleventh Circuit considers in deciding whether a detention has mushroomed into an arrest include the purpose of the detention, the diligence with which officers pursued the investigation, and the duration of the detention. (Doc. 21, p. 16, *citing to United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988) (numbering omitted)). Here, there is no allegation that Defendants Janufka and Oblesby acted with any delay or lack of diligence. Indeed, they reached out to the FBI for clearance and Plaintiff was allowed to leave as soon as the FBI gave them the all-clear. (Doc. 1, ¶ 31, 39-40).

But even if the Court finds that the encounter amounted to an "arrest," Plaintiff alleges enough fact to provide probable cause to justify any such arrest. As the Eleventh Circuit recently clarified, probable cause merely asks "whether a reasonable officer *could* conclude . . . that there was a substantial chance of criminal activity." *Washington v. Durand*, 25 F.4th 891, 989 (11th Cir. 2022; *citing to District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (emphasis in original). Additionally, probable cause "does not require officers to rule out a suspect's innocent explanation of suspicious facts" and thus does not require an officer to "resolve conflicting evidence in a manner favorable to the suspect." *Wesby*, 138 S. Ct. at 588. Here, and as discussed above, the combination of Plaintiff's lack of candor, with his recent whereabouts and his placement on the No-Fly list is enough for any reasonable officer to conclude that criminal activity *could* be afoot.

5

For these reasons, and those in State Defendant's initial motion to dismiss, Plaintiff fails to allege facts to support his unlawful seizure violation and that claim is due to be dismissed.

**B. Plaintiff's response in support of his Fourth Amendment unlawful search claim.**

In their motion, State Defendants showed that Plaintiff has not alleged facts establishing an unlawful search of his truck. (Doc. 14-1, p. 10). This is because the "automobile exception" permits searches of vehicles that are readily mobile and where probable cause exists to believe that the vehicles contain contraband. (Doc. 14-1, p. 11, *citing to Maryland v. Dyson*, 527, U.S. 465, 467 (1999)).

In response, Plaintiff concedes that his truck was "readily mobile," but argues that there was no probable cause to support the alleged search. (Doc. 21, p. 18). Plaintiff argues that "probable cause exists if 'under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime *will* be found in the vehicle." *Id.*, *citing to United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006) (emphasis added). But as discussed above, this is the old and incorrect legal standard for probable cause. *Washington v. Durand*, 25 F.4th at 898. Instead, the new standard asks whether contraband or evidence of a crime *could* be found in the vehicle. *Id.*, *see also Wesby*, 138 S. Ct. at 588. Indeed, the *Wesby* standard is less demanding than the "older standard." *Durand*, 25 F.4th at 899.[2] As State Defendants have shown, under the circumstances and facts alleged here, it was reasonable for the troopers to believe that the truck *could* contain contraband or evidence of wrongdoing. After all, Plaintiff was less than candid with the troopers during routine and legal questioning after he was stopped for a traffic infraction, he told officers that he was returning from the site of the Super Bowl, and then the

---

[2] In their motion, State Defendants relied on the older standard. However, State Defendants filed their motion before the *Durand* ruling.

officers discovered that he was on a federal No Fly list of suspected terrorists. (Doc. 1; ¶¶ 11, 13, 18, 25, 28, 29-30).

Accordingly, the facts as alleged do not show a Fourth Amendment illegal search and that claim too is due to be dismissed.

### C. Plaintiff's response to State Defendants' qualified immunity showing.

In their motion, State Defendants showed that Defendants Janufka and Oblesby were entitled to qualified immunity because Plaintiff has not alleged facts showing a violation of his rights, that any purported violation was not "clearly unlawful," and that in any event those Defendants had arguable probable cause to justify their actions. (Doc. 14-1, pp. 13-15).

In response, Plaintiff concedes that he cannot point to a "materially similar case" already decided by the Supreme Court, the Eleventh Circuit or the Georgia Supreme Court that would have placed Defendants Janufka and Oglesby on notice that they were clearly acting unlawfully. Instead, Plaintiff argues that "broader, clearly established principles" should have made it clear that the troopers' conduct "so obviously violates the constitution that prior case law is unnecessary." (Doc. 21, p. 19). However, the Eleventh Circuit has held that "obvious clarity" cases are a "narrow exception," that are "rare and don't arise often." *King v. Pridmore*, 961 F.3d 1135, 1146 (11th Cir. 2020); *citing to Gaines v. Wardynski*, 871 F.3d at 1201, 1209 (11th Cir. 2017); *Dukes v. Deaton*, 852 F.3d 1035, 1043 (11th Cir. 2017) and *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002). Furthermore, "[i]n light of the rarity of obvious clarity cases, if a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate." *King v. Pridmore*, 961 F.3d at 1146, *citing to Corbitt v. Vickers*, 929 F.3d 1304, 1312 (11th Cir. 2019); ("Notwithstanding the availability of [the obvious clarity exceptions], this Court has observed on

7

several occasions that 'if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'") (citing *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009), in turn quoting *Priester v. City of Rivera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)).

Under the facts as alleged here, it cannot be maintained that all objectively reasonable officers in the position of the troopers here should have known—with obvious clarity—that there was no arguable probable cause to conduct an investigatory detention of Plaintiff and search Plaintiff's truck when Plaintiff was less than candid about his criminal history and never mentioned that he was detained overseas until after the troopers conducted a routine NCIC search and found out that Plaintiff was on the No Fly list of suspected terrorists. This, in conjunction with Plaintiff previously informing the troopers that he was returning from the site of the Super Bowl, was sufficient to provide arguable probable cause to justify Defendants' Janufka and Oglesby investigation and shield them with qualified immunity. Indeed, as Defendants have shown above, the troopers had more than arguable probable cause—they had reasonable suspicion and probable cause for the investigatory detention of Plaintiff, and they had probable cause to search Plaintiff's truck. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) (it is constitutionally permissible for law enforcement officers to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."); *Collins v. Virginia*, 138 S.Ct. 1663, 1669 (2018) ("officers may search an automobile without having obtained a warrant so long as they have probable cause to do so.").[3]

---

[3] Plaintiff also suggests that the troopers allegedly violated NCIC policy, which in turn should have made it obvious to the troopers that they were acting unlawfully. (Doc. 21, p. 21). However, it is well established that an alleged violation of a rule does not, by itself, amounts to a

Accordingly, Defendants Janufka and Oglesby are entitled to qualified immunity.

**D. Plaintiff's response to State Defendants' *Ex parte Young* argument.**

In their motion, State Defendants showed that Plaintiff requested injunctive relief was "untethered to the facts alleged," that Plaintiff is not entitled to *Ex parte Young* relief because he has not alleged facts showing a constitutional violation, and that, in any event, Plaintiff has not alleged facts showing a "continuing violation of his rights." (Doc. 14-1, pp. 16-17).

In response, Plaintiff does nothing to show a continuing violation of purported rights. Instead, he argues that he is "uniquely vulnerable" to a possible Fourth Amendment violation because of his work as a truck driver. (Doc. 21, p. 23). But vulnerability to a possible violation is not a fact showing a continuing violation.

Plaintiff makes the conclusory assertion that "GSP [has] a policy or procedure of extending routine traffic stops based on detained individuals' watch listing status." (*Id.*). However, the Complaint never referenced any such policy. The only policy mentioned in the Complaint was the NCIC policy—not a GSP policy. (Doc. 1, ¶¶ 57-61). Nor has Plaintiff alleged facts showing that GSP has stopped him before or after this encounter, or that GSP has routinely stopped other truck drivers on the No Fly list. In other words, his conclusory arguments to the contrary, Plaintiff has not alleged any fact showing a continuing violation of his rights and is therefore not entitled to *Ex parte Young* relief. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1338 (11th Cir. 1999) (an "ongoing and continuous violation of federal law" is required to invoke the *Ex Parte Young* exception.).

---

constitutional tort. *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"); see also *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *United States v. Caceres*, 440 U.S. 741, 751-52 (1979).

## **Conclusion**

For the foregoing reasons, and those in their initial motion to dismiss (doc. 14-1), State Defendants submit that their motion to dismiss should be granted.

Respectfully submitted, this 3rd day of June, 2022.

CHRISTOPHER M. CARR   112505
Attorney General

*Please Serve*:
Rodney Atreopersaud
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334
Tel: (404) 458-3627
Email: ratreopersaud@law.ga.gov

KATHLEEN M. PACIOUS   558555
Deputy Attorney General

SUSAN E. TEASTER   701415
Sr. Assistant Attorney General

s/ *Rodney Atreopersaud*
RODNEY H. ATREOPERSAUD 309454
Assistant Attorney General

*Counsels for State Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a true and correct copy of the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

This 3rd day of June, 2022.

*/s/ Rodney H. Atreopersaud*
RODNEY H. ATREOPERSAUD